### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :
                               :

        v                     :     CRIMINAL NO.  08-242 (PLF)
                               :

GREGORY JOEL SITZMANN      :
        Defendant.        :

### GOVERNMENT'S MEMORANDUM ON ADMISSIBILITY
### OF CERTAIN INTRINSIC EVIDENCE OR IN THE
### ALTERNATIVE MOTION TO ADMIT OTHER CRIMES
### EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States of America, by and through its attorney, the United States Attorney for the

District of Columbia, hereby gives notice of certain evidence described below that it intends to offer

at trial against the defendant which is both "intrinsic" to the case and which is admissible under

Federal Rule of Evidence 404(b).  The government relies upon the points and authorities set out in

this memorandum and at any hearing on this matter.

### INTRODUCTION

On August 7, 2008, defendant Gregory Sitzmann was indicted by a federal grand jury for

Conspiracy to Distribute and Possess With Intent to Distribute More than Five Kilograms of

Cocaine, in violation of 21 U.S.C., Sections 841(a)(1) and 841(b)(1)(A)(ii).  The indictment alleged

that the conspiracy commenced no later than the 1990s and continued until at least 2004, that the

defendant knowingly, willfully and intentionally conspired to distribute and possess with intent to

distribute cocaine, and that the conspiracy was conducted in the United States and several foreign

countries, including Colombia, Mexico, Canada, Spain, France and Italy.

In this case, Gregory Sitzmann was the leader of an international drug trafficking and money

laundering organization that operated out of the United States, Canada, Mexico, Colombia, France, Italy, Spain and other countries. Sitzmann has used and conspired to use numerous individuals and artifices, including airplanes, both commercial and private, and automobiles, to transport large shipments of cocaine and marijuana from Columbia and Mexico into the United States, Canada, Spain, France, Italy and elsewhere. Likewise, Sitzmann used individuals and artifices to transport proceeds of his drug trafficking activity into and through the United States and other countries. As reflected in the United States' Third Amended Bill of Particulars, defendant's co-conspirators included the following individuals: Billy Long, Andy Gerst, Gary Paulson, Jerry Harvey, John Sager, members of the Canadian Hells Angels, and John Dwyer.

## PROFFER OF EVIDENCE

The government will offer evidence at defendant Sitzmann's trial showing the following:[1]

1.    **1990 Federal Drug Conspiracy Conviction**

On March 6, 1990, the defendant pled guilty to conspiracy to import at least five kilograms of cocaine. From December 1986 to March 1987, the defendant conspired with other individuals, including John Dwyer, to transport cocaine from Colombia to the United States via the Bahamas. Sitzmann arranged to have pilots fly a private plane from the United States to Colombia in order to pick up a load of approximately 340 kilograms of cocaine. The load was to be transported to the Bahamas where it would be dropped to speed boats waiting to then transport the cocaine to the United States.

On January 17, 1987, on their way to Colombia from Florida, the pilots crash-landed the

---

[1]We recite evidence pertinent to this filing. This is by no means an exhaustive list of evidence to be offered against the defendant.

plane on its belly off the Colombian shore and could not complete the transaction. One of the pilots was John Dwyer. The defendant then had two pilots fly one of his planes from the United States to Colombia to pick up the cocaine. On January 29, 1987, on their way to Colombia from Florida, the pilots ran out of fuel and crash landed the plane off the coast of Colombia and again could not complete the transaction. On March 11, 1987, before Sitzmann could complete his third attempt to pick up the cocaine, he was arrested in Florida. When he was arrested, Sitzmann had two driver's licenses in his possession bearing his picture, but reflecting the names of other persons. One driver's license was in the name of "Billy Lee Long", the name of a co-conspirator of the defendant in the instant case.    On or about March 6, 1990, in the United States District Court for the Southern District of Florida, defendant Sitzmann pled guilty to conspiracy to import at least five kilograms of cocaine. On or about May 9, 1990, the defendant was sentenced to 5 years incarceration.

While pending trial in the Florida case, defendant was incarcerated in the Miami Correctional Center together with at least some of his soon-to-be co-conspirators in the instant case. It was there that he met Gary Paulson, who was incarcerated on drug trafficking charges, and John Sager, who was incarcerated on drug trafficking charges, and it was there that he became reacquainted with co-conspirator Jerry Harvey, who was incarcerated on tax fraud charges.

While at the Miami Correctional Center, defendant was contemplating and devising his future drug trafficking operation. It was there that defendant and Paulson agreed to traffic in illegal narcotics, including cocaine, after defendant's release. It was also there where defendant and John Sager discussed what types of airplanes would be best for drug trafficking and they talked about smuggling cocaine into foreign countries, including Canada and countries in Europe, where drug laws were more lenient than in the United States. Defendant also talked with Jerry Harvey about

3

illegal drug trafficking and money laundering while both were inmates at the Miami Correctional Center. Defendant asked Jerry Harvey to look into a King Air airplane that defendant was contemplating using for drug smuggling when he got out of prison. Harvey advised defendant that the plane was an undercover government plane.

2. **Sitzmann's Drug Smuggling Admissions To Jerry Harvey**

During the 1980s and prior to Sitzmann's arrest in the federal conspiracy case, Sitzmann consulted with Jerry Harvey about drug smuggling techniques, how to airdrop illegal narcotics with the use of airplanes and what types of airplanes Sitzmann should buy or use for specific drug smuggling operations, including with respect to cocaine and marijuana. During this period, Sitzmann told Harvey that he was smuggling hundreds of kilos of cocaine from Colombia to the Bahamas and then into the United States.

3. **1985 Bahamian Drug Conviction**

On or about May 27, 1985, in the late evening hours, law enforcement officers in the Bahamas responded to a call about suspicious activity in the area of Cape Eleuthera. When officers arrived in the Cape area, they noticed three speedboats in the lagoon. They also saw approximately nine 15-gallon fuel containers nearby. A white male was also seen and stopped in the immediate area. Minutes later, the officers heard a low flying plane and they headed towards a nearby airstrip. When they reached the airstrip, the officers saw a twin engine Cessna aircraft on the runway. The officers approached the aircraft and saw six white males, one of which was defendant Sitzmann (who used the alias Anthony Martin), standing around the airplane. The officers also saw a number of yellow and blue kilogram packages on the ground near the aircraft. A search of the aircraft revealed 11 brown duffle bags, containing 163 kilograms of cocaine. All the seats were missing from the

4

aircraft with the exception of the seats for the pilot and co-pilot. Sitzmann was charged with Possession of Dangerous Drugs and Possession of Dangerous Drugs with Intent to Supply. On or about July 19, 1985, after a trial, Sitzmann was convicted of the charged offenses and was sentenced to four years incarceration on each count, to run concurrently. Sitzmann's conviction was upheld on appeal.

On or about August 31, 1986, Sitzmann escaped from prison with the assistance of Jerry Harvey, Billy Long, and Andy Gerst, defendant's friends and future co-conspirator in the instant case. Billy Long already had a drug relationship with the defendant before the escape. Sitzmann had bribed officials at the Bahamian prison in which he was incarcerated, which was financed by Jerry Harvey, and escaped from the prison with the assistance of Gerst. With the assistance of Billy Long and Andy Gerst, Sitzmann evaded capture and left the country on a cruise ship using a false name. A warrant for his arrest was issued on or about September 5, 1986. In April 1992, Sitzmann was arrested by U.S. Marshals based on the warrant. Sitzmann was extradited to the Bahamas and served the remainder of his sentence until approximately 1994.

4.   **1984 Indictment In South Dakota For Drug Conspiracy**

From November 1983 through September 1984, defendant Sitzmann conspired with others to distribute and possess with intent to distribute kilogram quantities of cocaine. During that period defendant Sitzmann supplied at least 3 kilograms of cocaine to another drug trafficker. The first transfer of cocaine occurred in November 1983, in Le Mars, Iowa. Defendant, through an intermediary, supplied one kilogram of cocaine to the other drug trafficker for redistribution purposes. A second transfer occurred in late February 1984 in Ft. Lauderdale, Florida. Defendant Sitzmann met with the same drug trafficker involved in the first transfer and supplied him with one

kilogram of cocaine. During this transaction, Sitzmann made arrangements with a courier (who was also a co-conspirator of the defendant during the time period at issue in the instant case) to transport the package of cocaine to Kansas City, Missouri. The courier met the drug trafficker in Kansas City and transferred the cocaine to him. The last transaction occurred in September 1984 in Ft. Lauderdale, Florida. Defendant Sitzmann met with the same drug trafficker for purposes of supplying him with one kilogram of cocaine. Sitzmann and the drug trafficker drove to South Miami, Florida, where Sitzmann acquired one kilogram of cocaine from suppliers. Sitzmann transferred the one kilogram of cocaine to drug trafficker. The drug trafficker was arrested soon after his acquisition of the cocaine. As a result of a subsequent search of the drug trafficker's home, approximately 900 grams of cocaine was recovered.

### LEGAL ANALYSIS AND ARGUMENT

1.    Intrinsic Evidence.

Our Court of Appeals has defined intrinsic crimes evidence by quoting the Eleventh Circuit:

> "Evidence of criminal activity other than the charged offense is not considered extrinsic if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, if it was inextricably intertwined with the evidence regarding the charged offense, or it is necessary to complete the story of the crime of trial . . ."

United States v. Badru, 97 F.3d 1471, 1474 (D.C. 1996). Badru is particularly instructive on this point. In Badru, defendants were charged with conspiracy to distribute and possess with the intent to distribute heroin and actual counts of distribution. Id. at 1473. At trial, the government introduced evidence to suggest that the defendants' prior trips to Nigeria were undertaken as part of their smuggling operation of heroin into the United States. Id. The Court of Appeals held that the

6

evidence was not "other crimes" within the purview of Fed. R. Evid. 404(b); instead, it had been

properly admitted as "intrinsic" other crimes evidence:

> Given the similar modus operandi between the couriers' pervious
> trips to Nigeria and the planning and execution of the trip that ended
> in April 1993 with the seizure of 5,569 grams of heroin from the
> couriers' luggage, a jury reasonably could find that appellants
> conducted the previous trips for the same purpose as the trip that
> ended in April 1993.

Id. at 1474.

Thus, as the Court explained, evidence of acts which are part of, or "inextricably intertwined"

with, a charged crime is direct proof of that crime and is not subject to Rule 404(b) analysis. United

States v. Badru, 97 F.3d 1471, 1474-75 (D.C. Cir. 1996); United States v. Allen, 960 F.2d 1055,

1058 (D.C. Cir. 1992); United States v. Diaz, 878 F.2d 608, 614-16 & n.2 & 3 (2nd Cir. 1989);

United States v. Edelin, 128 F. Supp. 2d 23, 48 (D.D.C. 2001) ("Evidence of other crimes related

to the RICO enterprise and drug conspiracy charged does not come within the definition of Rule

404(b)."); United States v. Mahdi, 598 F.3d 883, 890-91 (D.C. Cir. 2010) (in narcotics and RICO

conspiracies case, evidence of uncharged acts by defendant putting knife to back of a woman who

sold drugs for him and pulling knife on another was properly labeled intrinsic as it offered to

show how defendant kept the "worker bees in line" and the kind of organizational control he

exercised, and thus not subject to notice requirements of 404(b)); United States v. Leichtman, 742

F.2d 598 (11th Cir. 1984)(in a kidnaping conspiracy case, evidence that the kidnaping arose from a

marijuana deal gone awry justified the introduction of the latter because it was inextricably

intertwined with the kidnaping and provided the motive for the kidnaping).

In Mahdi, 598 F.3d at 890, the District of Columbia Circuit Court restated that an "intrinsic

act .... is an act that is part of the crime charged," (punctuation omitted), citing <u>United States v.</u> <u>Bowie</u>, 232 F.2d 923 (D.C. Cir. 2000), and that intrinsic evidence is offered as direct evidence of a fact in issue, "not as circumstantial evidence requiring an inference regarding the character of the accused," citing <u>United States v. Alexander</u>, 331 F.3d 116, 125-26 and n.13 (D.C. Cir. 2003) (quoting <u>Bowie</u>, 232 F.3d at 9127). <u>See</u> <u>also</u> <u>Badru</u>, 97 F.3d at 1475 (citing Wright & Graham). Moreover, where evidence of the defendants' acts are either inextricably intertwined with a charged conspiracy, or provide evidence of the conspiracy itself, it is admissible without Rule 404(b) analysis, regardless of whether those acts fall outside the period during which the indictment alleges the conspiracy existed. <u>United States v. Diaz</u>, 878 F.2d at 614-616 & n.2 (crimes, wrongs or acts – that the house was being used as a stash pad – occurring before the alleged inception date of conspiracy were relevant and admissible in drug conspiracy prosecution and did not raise Rule 404(b) question); <u>United States v. Bates</u>, 600 F.2d 505, 509 (5th Cir. 1979) (testimony concerning acts and backgrounds of co-conspirators – their marijuana importation business and smuggling activities in Mexico – including evidence of behavior antedating period covered by indictment, was not extraneous evidence of other crimes, but admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior); <u>United States v. Bermudez</u>, 526 F.2d 89, 95 (2nd Cir. 1975) (upholding admission of traces of narcotics and narcotics-related equipment seized in home six weeks after conspiracy to distribute cocaine ended).

To help guide trial courts when confronted with determining whether evidence is intrinsic or extrinsic, appellate courts discuss Fed. Rule 404(b). "Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'" <u>United States v. Allen</u>, 960 F.2d 1055, 1058 (D.C. Cir.), <u>cert.</u> <u>denied</u>, 506 U.S. 881

8

(1992). "[Evidence that Allen watched his co-conspirator sell to an undercover officer] was an intrinsic part of the witness' account of the circumstances surrounding the offense for which Allen was indicted (and also was relevant both to Allen's intent to distribute and his knowledge about [his co-conspirator's] drug cache." Id. at 1058; see also United States v. Gartmon, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (evidence that defendant charged with fraud had threatened a coconspirator (in the most outrageous way imaginable) was not "other crimes evidence" but instead "inextricably intertwined" with charged offense); United States v. Garces, 133 F.3d 70, 77 (D.C. Cir. 1998) (holding that evidence that "was part of the story" was not other crimes evidence); United States v. Washington, 12 F.3d 1128, 1134-35 (D.C. Cir. 1994), cert. denied 513 U.S. 828 (1994) ("Moreover, 'Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.' The testimony revealing that Early used his cousin's Kaiser Permanente health insurance card to obtain medical treatment was intrinsic to the charged offense because it helped establish his identity as the driver of the Mazda . . ."); Fed. R. Evid. 404(b), Advisory Comm. Note regarding 1991 Amendment ("The amendment does not extend to evidence of acts which are 'intrinsic' to the charged offense [citation omitted].").

Evidence that establishes associations, or prior relationships, is also relevant and admissible because it may be proof of the defendant's knowing participation in the conspiracy and be inextricably intertwined with the facts on trial. Such evidence is also characterized as intrinsic. See, e.g. United States v. Johnson, 12 F.3d 827, 831 (8th Cir. 1994) (evidence of the parties' association is relevant to the existence of the conspiracy and the accused's participation; moreover, given that the nature of a conspiracy entails secrecy and an agreement, a members' participation in it is often established by way of inference from surrounding circumstances); United States v. Robinson, 978

9

F.2d 1554, 1562-63 (10th Cir. 1992) (gang affiliation evidence, such as the Crips' blue clothing and

gang posed picture, is "associational evidence" which, standing alone could not support a conviction,

but may be directly relevant on the issues of formation, agreement, and purpose of a conspiracy.

"Gang membership helped to establish an agreement among the subjects, the purpose of the

conspiracy and knowledge on the part of these defendants."); United States v. Veal, 703 F.2d 1224,

1230 (11th Cir. 1983) (statements of an alleged co-conspirator may be admitted at trial if relevant

to prove the conspiracy existed, even if made after the conspiracy ended.)

Even though it may appear to be other crimes evidence, intrinsic evidence is not "other

crimes" evidence and is not subject to a Rule 404(b) "other crimes" evidence analysis. Where

evidence of the defendant's acts are either inextricably intertwined with a charged conspiracy or

provide direct evidence of the conspiracy, it is admissible regardless of whether those acts are

outside the conspiracy period alleged in the indictment. See United States v. Diaz, 878 F.2d at 614-

616 and n.2. The government will present evidence and testimony about defendant's incarceration

in the Miami Correctional Center while pending trial in his 1990 federal conspiracy case and his

discussions with his soon-to-be co-conspirators devising their future international drug trafficking

endeavor. This evidence is intended "to inform the jury of the background of the conspiracy

charged, in order to help explain how the illegal relationship between participants in the crime

developed, [and] to explain the mutual trust that existed between coconspirators." United States v.

Diaz, 176 F.3d 52, 79 (2nd Cir.), cert. denied, 528 U.S. 875 (1999). It was as a result of the

defendant's arrest in the 1990 case, the level of drug trafficking for which he was charged which

increased his drug trafficking stature, the conspiratorial opportunity that resulted from his

incarceration at the Miami Correctional Center, and the trust that developed between these inmates

that led to the formation of the international drug conspiracy at issue here. It was at the Miami

Correctional Center that the conspiracy began to take shape, including with respect to trafficking cocaine through the United States and into Canada and into Europe and contemplating the use of airplanes. This evidence is directly relevant on the issues of formation, agreement and purpose of the conspiracy. United States v. Robinson, 978 F.2d at 1562-63 (gang affiliation evidence is "associational evidence" which may be directly relevant on the issues of formation, agreement, and purpose of a conspiracy).

This is also the case with respect to defendant's prior involvement with Jerry Harvey, Billy Long and Andy Gerst, co-conspirators in the instant case. They assisted Sitzmann in escaping from prison following his arrest and conviction for cocaine smuggling in the Bahamas. Defendant also consulted with Harvey on drug trafficking techniques and talked to Harvey about his cocaine smuggling from Colombia, though the Bahamas, and into the United States. The United States will offer this evidence to prove that they had a common vocation, that they had a mutual trust, and to corroborate that the defendant would engage in a large-scale international drug trafficking enterprise with them. While all this evidence is admissible as both intrinsic and Rule 404(b) evidence, this evidence is firstly independently admissible as direct proof of the conspiracy with which the defendant is charged.

       2.     All The Evidence Is Admissible Under Rule 404(b).

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including identity, motive, opportunity, intent, plan, knowledge, absence of mistake or accident and corroboration of other evidence. See United States v. Bowie, 232 F.3d 923, 926, 930 (D.C. Cir. 2000). Importantly, this rule is one of "inclusion rather than exclusion." Id. at 929. As the Court of Appeals has noted

11

en banc, while the first sentence of the rule is framed restrictively, the rule is actually quite permissive, prohibiting the admission of "other crimes" evidence in but one circumstance – for the purpose of proving that a person's actions conformed to his character. United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998). In short, Rule 404(b) bars "not evidence as such, but a theory of admissibility." Id. at 1202. As the Court stated in United States v. Cassell, 292 F.3d 788, 791 (D.C. Cir. 2002) (citing United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original), "[t]rue, the evidence may tend to show that [defendant] is a person of bad character, but Rule 404(b) does not thereby render it inadmissible. To reiterate what we have stated before . . . under Rule 404(b), 'any purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character.'"

Such evidence is of course subject like all evidence to the strictures of Rule 403. Thus, the admissibility of other crimes evidence rests on a two-step inquiry: 1) whether the other crimes evidence is relevant to an issue other than the defendant's character or propensity, and if so, 2) whether the evidence is admissible under Rule 403 because its probative value is not substantially outweighed by the danger of unfair prejudice. United States v. Moore, 732 F.2d 983, 987 (D.C. Cir. 1984).

As its language reflects, Rule 403 "tilts, as do the rules as a whole, toward the admission of evidence in close cases" -- even when other crimes evidence is involved. Moore, 732 F.2d at 989. See Huddleston v. United States, 485 U.S. 681, 688-89 (1988) ("Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that

12

restrictions would not be placed on the admission of such evidence").[2]

As the Court of Appeals noted in Cassell, "[w]e have previously held that 'in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged.'" Id. at 793 (citation omitted). In the instant case, among other things, the government must prove that the defendant knowingly and willfully conspired to distribute and possess with the intent to distribute a very large quantity of cocaine. The "other crimes" evidence of defendant's previous drug trafficking conspiracies, drug distributions, and possessions of drugs with the intent to distribute, is highly probative of the defendant's opportunity and ability to traffic in large quantities of illegal drugs, his knowing and intentional involvement in the drug trafficking conspiracy at issue in the instant case and his possession of cocaine here. The other crimes evidence also shows that the defendant's involvement in overt acts of the conspiracy, including his possession of drugs and his use of airplanes, automobiles and other artifices in drug trafficking, were not innocent and the result of mistake or accident. We note, for example, the defendant provided varying stories to French law enforcement when he was arrested with approximately seven kilograms

---

[2]     As for the burden that must be met in presenting other crimes evidence, the Court is not required to make any sort of preliminary finding or to weigh the evidence as to the other crimes. Indeed, as the Supreme Court has emphasized, "[i]n determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." Huddleston, 485 U.S. t 690 (emphasis added). Instead, the trial court "simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact [other crimes evidence] . . . by a preponderance of the evidence." Id. at 690. And in doing so, the trial court must consider all the pieces of evidence presented to the jury, both as to the other crimes evidence and the charged conduct. Ibid.

of cocaine contained in the secret compartment of leather bags in his possession. This arrest is a critical part of the conspiracy at issue in the instant case. One story defendant provided was that he thought he was carrying one million euros in the secret compartments of the bags, not cocaine. Defendant's prior drug trafficking is highly probative of defendant's actual knowledge that he was carrying cocaine and his intent to distribute the cocaine. As the Court of Appeals observed en banc, "[a] defendant's hands-on experience in the drug trade cannot alone prove that he possessed drugs on any given occasion. But it can show that he knew how to get drugs, what they looked like, where to sell them, and so forth. Evidence of a defendant's experience in dealing drugs -- evidence, that is, of his 'bad acts' -- thus may be a 'brick' in the 'wall' of evidence needed to prove possession." Crowder, 141 F.3d at 1209, n.5 (en banc).

Proving defendant's prior involvement in very large quantities of cocaine is critical in the government's ability to prove the extent of defendant's conspiracy and that it involved hundreds of kilograms of cocaine. Although witnesses will testify about the movement of hundreds of kilograms of cocaine, this is primarily a historical case, a case without wiretaps of the defendant, undercover purchases of drugs from the defendant , or the seizure of large quantities of kilograms of cocaine. The only cocaine recovered from the actual possession of the defendant during the conspiracy was the seven kilograms of cocaine seized from the leather bags in the trunk of his car in France in 2004. Defendant's prior cases will corroborate the witnesses in the instant case, who are expected to be subjected to aggressive cross-examined by the defense, and provide needed support for the proposition that the defendant had the plan and ability to acquire quantities of cocaine of that magnitude. Rule 404(b) specifically allows for the introduction of such evidence for the purpose of corroborating other evidence and to prove intent, motive, opportunity, plan and knowledge. This

14

is particular so when the government has shown a particularized need for the evidence.

Because of the highly probative nature of such Rule 404(b) evidence in the context of drug cases, the courts have generally not hesitated to admit such evidence for the purposes sought here. See, e.g., United States v. Burch, 156 F.3d 1315, 1323-24 (D.C. Cir. 1998) (evidence of defendant's prior arrest and conviction for PWID crack cocaine was properly admitted under Rule 404(b) to show defendant's knowledge and intent in prosecution for possession with intent to distribute crack cocaine);  Crowder, 141 F.3d at 1208-09 (noting that defendant's subsequent purchase of cocaine was permissible under Rule 404(b) for multiple purposes, including motive, intent, possession, and knowledge) (en banc); United States v. Johnson, 40 F.3d 436, 441 n.3 (D.C. Cir. 1994) (prior drug transaction properly admitted under Rule 404(b)). The significant probative value of the evidence here is clearly not outweighed by the danger of unfair prejudice in this case. Whatever prejudice the defendant may perceive, moreover, can adequately be addressed through the use of a limiting instruction to the jury.[3]

Even where the evidence sought to be introduced pursuant to Rule 404(b) was the subject of a prior prosecution, this does not give rise to any constitutional implications. See United States v. Long, 328 F.3d 655, 661 (D.C. Cir. 2003) ("The other activity need not have resulted in a charge or conviction; indeed, the defendant may even have been acquitted of the conduct, or the conduct may have been entirely lawful."). Courts have uniformly held that evidence of prior bad acts which was the subject of a trial and resulted in an acquittal could nevertheless be introduced in a subsequent

---

[3]     As we discussed above, the United States is also seeking the admission of defendant's prior bad acts for purposes other than those governed by Rule 404(b). For example, the defendant's prior dealings with his co-conspirators, their discussions of drug trafficking prior to the conspiracy period at issue here will be used to prove his prior association with his co-conspirators, evidence that goes directly to the charged offenses here.

15

trial of the same defendant on other charges. For example, in United States v. Felix, 503 U.S. 378 (1992), a defendant was charged in Missouri with a drug offense which involved his conduct over a four-day period in August of 1987. Id. at 380-81. Later, he was charged in Oklahoma with narcotics conspiracy in that state. Id. at 382-83. The subject matter and time frame of the charged Oklahoma conspiracy encompassed activity on the same dates charged in the Missouri case, and evidence of the charged offenses in the Missouri case, in which the defendant had been convicted, was introduced as 404(b) evidence at the trial of the Oklahoma conspiracy case. Id. The Supreme Court held that such use of 404(b) evidence did not violate the double jeopardy clause, as it did not amount to a prosecution for those offenses. Id. at 384. Thus, the Court ruled, implicitly if not explicitly, that even if the defendant had been acquitted of the charges in the Missouri trial, such evidence would still have been admissible in the trial of the defendant in Oklahoma because the relevance of the evidence offered under Rule 404(b) is governed by a lower standard of proof than that required for a conviction. Id. at 385-392; see also United States v. Dowling, 493 U.S. 342, 348-50 (1990) (evidence of defendant's commission of other bank robbery admissible in defendant's separate bank robbery trial to establish identity and intent; fact that defendant had been acquitted of prior charge, and doctrine of collateral estoppel, did not preclude admission of 404(b) evidence as prior acquittal did not determine ultimate issue in present case or issue of identity in prior case).

WHEREFORE, for the reasons stated above, the United States respectfully submits that the government should be able to introduce the above-described evidence as intrinsic evidence and/or "other crimes" evidence pursuant to Fed. R. Crim. P. 404(b).

Respectfully submitted,


RONALD C. MACHEN JR.
United States Attorney


___/s/_____
GEORGE ELIOPOULOS
D.C. Bar No. 390601
SHARAD KHANDELWAL
D.C. Bar No. 468996
Assistant United States Attorneys
555 4th Street, N.W.
Washington, DC 20530
Phone: (202) 252-6957

17