UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
                                        )
UNITED STATES OF AMERICA                )
                                        )
        v.                              )        Criminal No. 08-0242 (PLF)
                                        )
GREGORY JOEL SITZMANN,                  )
                                        )
        Defendant.                      )
_____ )

OPINION AND ORDER

        This matter is before the Court on defendant Gregory Joel Sitzmann's motion for

an order directing the production of the grand jury testimony of George Jones and Terrence

Colligan, as well as all other impeachment evidence that may be in the government's possession.

The government opposes the defendant's motion.  Upon consideration of the parties' written

submissions, the relevant case law, and pertinent portions of the record in this case, the Court

will deny the defendant's motion.[1]

_____

[1]        The papers reviewed in connection with the pending motion include the
following:  defendant's motion for an order directing the production of the grand jury testimony
of Jones and Colligan ("Def. Mot.") [Dkt. No. 242]; the December 11, 2012 letter from
defendant's counsel to the government requesting Brady and Giglio material ("Def. Dec. 11,
2012 Letter") [Dkt. No. 242-1]; the government's November 6, 2013 letter to defendant's
counsel ("Gov't Nov. 6, 2013 Letter") [Dkt. No. 242-3]; Jones' agreed statement of facts in
support of his guilty plea ("Jones' Statement of Facts") [Dkt. No. 242-3]; the government's
opposition to defendant's motion ("Gov't Opp.") [Dkt. No. 243]; relevant transcripts of the
recorded conversations between Jones and Colligan [Dkt. No. 243-1]; excerpts from defendant's
various address books [Dkt. No. 243-2 to Dkt. No. 243-4; Dkt. No. 243-6 to Dkt. No. 243-7];
Dep't of Homeland Security Report of Investigation of Gary Paulson [Dkt. No. 243-5];
defendant's reply to the government's opposition ("Def. Reply") [Dkt. No. 244]; defendant's *pro
se* motion requesting the Court to consider additional evidence ("Def. June 12, 2014 Mot.")
[Dkt. No. 245]; defendant's April 27, 2014 letter to the Court asking that his *pro se* motion be

## I.  BACKGROUND

After a 23-day trial in April and May 2012, Gregory J. Sitzmann was found guilty of one count of conspiracy to distribute and possess with the intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841 and 846.  The government alleged that Sitzmann conspired with numerous other individuals, including George Jones, over the span of fourteen years, to distribute large quantities of cocaine in at least eight countries.  See Indictment at 1, Aug. 7, 2008 [Dkt. No. 2]; Third Amended Bill of Particulars, Aug. 11, 2011 [Dkt. No. 116].

On December 11, 2012, Sitzmann's present counsel — not his trial counsel — wrote the government to request any unproduced Brady or Giglio material relevant to the defendant's case.  Def. Dec. 11, 2012 Letter.[2]  More specifically, counsel asked the government whether Brady and Giglio disclosures pertaining to George Jones and Terrence Colligan — the latter of whom was a cooperating individual in the drug investigation against Sitzmann — had been produced to the defense in light of Rule 806 of the Federal Rules of Evidence.  Id.[3]  When

entered into the record and supplemented with the new information in his letter [Dkt. No. 247]; the June 4, 2014 letter from defendant's counsel to the Court regarding Sitzmann's pro se motion ("Def. June 4, 2014 Letter") [Dkt. No. 248]; and the transcript of William Buss' April 30, 2012 trial testimony ("Apr. 30, 2012 Trial Tr.") [Dkt. No. 220].

[2]     Sitzmann's present counsel — who was appointed on June 14, 2012, after the defendant's trial — requested the Brady and Giglio disclosure information because he did not know whether it had been produced to Sitzmann's prior counsel.  In his December 11, 2012 letter, Sitzmann's counsel also inquired about whether Jones' and Colligan's case files were under seal, and if they were, requested that the cases be unsealed.  Shortly thereafter, the government filed motions with the Court to unseal both case files.  Colligan's case file was unsealed on January 3, 2013, and Jones' case file was unsealed on July 25, 2014.

[3]     Under Rule 806 of the Federal Rules of Evidence, the credibility of a Rule 801(d)(2) hearsay declarant — including a defendant's co-conspirator, whose out-of-court

the government failed to respond to counsel's December 11, 2012 letter, counsel renewed his request at a hearing held before this Court on October 24, 2013, at which argument was held on Sitzmann's motion for judgment of acquittal or for a new trial.  Def. Mot. at 2.

On November 6, 2013, the government responded by letter to Sitzmann's counsel, stating that it had reviewed the grand jury transcripts of Jones and Colligan and had not found any exculpatory information in the transcripts.  Gov't Nov. 6, 2013 Letter at 1.  The government provided defense counsel with the dates on which Jones and Colligan had testified before the grand jury, as well as brief descriptions of their testimony, but did not provide copies of the transcripts.  Id. at 1-2.  The government also attached a copy of the statement of facts in support of Jones' guilty plea, which had been introduced in evidence before the grand jury.

Dissatisfied with the government's response, Sitzmann filed the instant motion requesting an order directing the government to produce the grand jury testimony of Jones and Colligan, as well as any other impeachment evidence.  Def. Mot. at 1.  Sitzmann argues that the government's November 6, 2013 letter describing aspects of Jones' and Colligan's grand jury testimony reveals "critical impeachment evidence" that the government failed to disclose.  Def. Mot. at 3.

More specifically, Sitzmann asserts that the testimony offered at trial by William Buss, a retired Metropolitan Police Department officer called by the government, appears to

---

statements were made in furtherance of the conspiracy, see FED. R. EVID. 801(d)(2)(E) — may be impeached "by any evidence that would be admissible for those purposes if the declarant had testified as a witness." FED. R. EVID. 806.

contradict Jones' grand jury testimony on two points.  Def. Mot. at 3-4.[4]  First, Sitzmann claims

that the government's description of Jones' grand jury testimony appears to show that Jones

approached Sitzmann in February 2004 because he "hoped" the defendant would give him drug-

related work.  Id. at 4.  According to Sitzmann's characterization of Buss' testimony, however,

Buss indicated that Jones had tried to acquire cocaine from Sitzmann "back into 'September,

October of 2003,'" and then made efforts to acquire 20 kilograms of cocaine from others,

"[b]ecause Mr. Sitzmann failed to supply it to him."  Id. at 3-4 (quoting Apr. 30, 2012 Trial Tr.

at 9:24-10:11) (Buss testimony) (emphasis in defendant's motion).  Thus, Sitzmann argues that

Jones' purported grand jury testimony appears to directly refute Agent Buss' trial testimony

regarding when Jones approached the defendant and what happened during that exchange.

Second, Sitzmann claims that Buss characterized as "Sitzmann's people" the individuals to

whom Jones had hoped to sell cocaine, which purportedly contradicts Jones' grand jury

testimony because it appears that Jones never stated that those individuals were involved in the

conspiracy charged in this case.  Id. at 5 (quoting Apr. 30, 2012 Trial Tr. at 11:19).

On the basis of this comparison of Agent Buss' trial testimony and the

government's summary of Jones' grand jury testimony, Sitzmann asserts that Jones' grand jury

testimony appears to contain both Brady and Giglio material that should have been produced to

the defense before trial.  Def. Mot. at 3-4.  In addition, Sitzmann alleges, without any discussion,

---

[4]    Officer Buss was assigned to a joint Task Force of the Metropolitan Police
Department and U.S. Immigration and Customs Enforcement ("ICE"), and was often referred to
at trial and in pretrial proceedings as an ICE agent or as Agent Buss.  The same is true
throughout this Opinion.  While the defendant in his motion makes a request for Colligan's grand
jury transcript, he does not offer any arguments relating specifically to Colligan's testimony.
Instead, the entirety of the defendant's motion focuses on the alleged contradictions between
Agent Buss' trial testimony and Jones' grand jury testimony.

that the government violated its obligations under <u>Napue v. Illinois</u>, 360 U.S. 264 (1959) and

<u>Mooney v. Holohan</u>, 294 U.S. 103 (1935), as well as Rule 16 of the Federal Rules of Criminal

Procedure, and the Jencks Act, 18 U.S.C. § 3500.  Def. Mot. at 1.

The government opposes Sitzmann's motion, maintaining that the defendant has

not demonstrated the "particularized need" required under Rule 6(e)(3)(E)(ii) of the Federal

Rules of Criminal Procedure, nor identified any previously undisclosed <u>Brady</u> or <u>Giglio</u> material

in Jones' or Colligan's grand jury testimony.  Gov't Opp. at 1-2.  Furthermore, the government

states that because neither Jones nor Colligan testified at trial, there is no basis under the Jencks

Act obligating the government to produce their grand jury testimony.  <u>Id</u>. at 2.  For the reasons

explained below, the Court agrees with the government.[5]

## II.  DISCUSSION

There are only a few exceptions permitting a defendant to pierce the

"indispensable secrecy of grand jury proceedings."  <u>In re Grand Jury Subpoena, Miller</u>, 405 F.3d

17, 18 (D.C. Cir. 2005) (Tatel, J., concurring in denial of rehearing en banc) (quoting <u>United</u>

<u>States v. R. Enterprises, Inc.</u>, 498 U.S. 292, 299 (1991)) (internal quotation marks omitted); <u>see</u>

<u>also</u> <u>United States v. Wilkerson</u>, 656 F. Supp. 2d 22, 34 (D.D.C. 2009).  For example, a

---

[5]      Shortly after filing the instant motion, which was drafted by counsel, Sitzmann
filed a *pro se* motion requesting the Court to consider additional evidence in deciding the instant
motion and his pending motion for judgment of acquittal or for a new trial.  Def. June 12, 2014
Mot.  Attached to Sitzmann's *pro se* motion are several documents, including:  two Department
of Homeland Security Reports of Investigation, dated July 21, 2004 and February 17, 2006; the
government's November 6, 2013 letter response to defendant's counsel; Jones' statement of facts
in connection with his plea; and the grand jury testimony of Jared Rine.  <u>Id</u>.  Some of these
documents — the government's November 6, 2013 letter and Jones' statement of facts — are
already attached to the instant motion and have been considered by the Court.  To the extent that
the defendant cites to anything else, the Court concludes that these documents are not relevant to
the instant motion.

defendant may obtain grand jury material if it is disclosable under <u>Brady</u>.  <u>United States v. Wilkerson</u>, 656 F. Supp. 2d at 34 ("[G]rand jury testimony is regularly disclosed to criminal defendants without court order pursuant to <u>Brady</u>." (quoting <u>Tierney v. United States</u>, 410 U.S. 914, 916 n.2 (1973)) (internal quotation marks omitted)).  In addition, Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure provides that "[t]he court may authorize disclosure — at a time, in a manner, and subject to any other conditions that it directs — of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  The Court analyzes Sitzmann's request for Jones' and Colligan's grand jury testimony under both of these exceptions.

### A.  *Brady*

Under <u>Brady</u>, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).  The government's <u>Brady</u> obligation also extends to information affecting the credibility of a government witness.  <u>Giglio v. United States</u>, 405 U.S. 150, 154-55 (1972).  A new trial is required if the court finds that the suppressed evidence is material under <u>Brady</u>, and "could . . . in any reasonable likelihood have affected the judgment of the jury."  <u>Id</u>. at 154 (quoting <u>Napue v. Illinois</u>, 360 U.S. at 271) (internal quotation marks omitted).

The three elements of a post-trial <u>Brady</u> claim are that:  "[t]he evidence at issue must [1] be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must [2] have been suppressed by the [government], either willfully or inadvertently; and [3] prejudice must have ensued."  <u>United States v. Wilson</u>, 605 F.3d 985, 1005

(D.C. Cir. 2010) (alterations in original) (quoting <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82

(1999)) (internal quotation marks omitted).  For prejudice to have ensued, "there must be a

'reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different.'"  <u>Id</u>. (quoting <u>Strickler v. Greene</u>, 527 U.S. at 280).

As a preliminary matter, the Court concludes that the defendant has failed to

demonstrate any of these elements with respect to Colligan's grand jury testimony.  While

Mr. Sitzmann requests the production of both Jones' and Colligan's grand jury testimony, he

does not offer any arguments specifically concerning the exculpatory or impeachment value of

Colligan's testimony.  The entirety of his motion discusses only Jones.  "[U]nless defendant is

able to raise at least a colorable claim that the [disputed material] contained evidence favorable

to [him] and material to his claim of innocence . . . no <u>Brady</u> violation will be established."

<u>United States v. Williams-Davis</u>, 90 F.3d 490, 514 (D.C. Cir. 1996) (alterations in original)

(quoting <u>United States v. Ramos</u>, 27 F.3d 65, 71 (3d Cir. 1994), where the court concluded that

the existence of <u>Brady</u> material cannot be inferred based upon speculation alone) (internal

quotation marks omitted).  Thus, the nondisclosure of Colligan's grand jury testimony does not

establish a <u>Brady</u> violation.  The remainder of the Court's discussion concerns only Sitzmann's

request for the production of Jones' grand jury testimony.

1.  Favorability

Evidence is favorable to the accused under <u>Brady</u> if it has either exculpatory or

impeachment value.  <u>Strickler v. Greene</u>, 527 U.S. at 282; <u>United States v. Bagley</u>, 473 U.S. 667,

676 (1985); <u>United States v. Smith</u>, 77 F.3d 511, 514 (D.C. Cir. 1996); <u>United States v. Safavian</u>,

233 F.R.D. 12, 17 (D.D.C. 2005).  This includes favorable evidence that is itself admissible, or

which could be used to impeach a prosecution witness.  <u>United States v. Safavian</u>, 233 F.R.D. at 16-17; <u>United States v. Trie</u>, 21 F. Supp. 2d 7, 23 (D.D.C. 1998) ("favorable evidence" encompasses "both evidence that is exculpatory and evidence that could be used to impeach a government witness").  The Court concludes that Sitzmann has not satisfied the favorability element with respect to Jones' grand jury testimony.  A comparison of the trial record and the government's description of Jones' grand jury testimony in its November 6, 2013 letter reveals that Jones' grand jury testimony does not contain exculpatory or impeachment material with respect to the two allegedly conflicting points cited by Sitzmann.

First, Sitzmann claims that Buss' trial testimony conflicts with Jones' purported grand jury testimony because Buss testified that Jones tried to acquire cocaine from Sitzmann "back into 'September, October of 2003,'" and later made efforts to acquire 20 kilograms of cocaine from others, "[b]ecause Mr. Sitzmann <u>failed</u> to supply it to him."  Def. Mot. at 3-4 (quoting Apr. 30, 2012 Trial Tr. at 9:24-10:11) (Buss testimony) (emphasis in defendant's motion).  Sitzmann asserts that the government's description of Jones' grand jury testimony appears to show that Jones approached Sitzmann in February 2004, not in September or October of 2003, and that Jones "asked" and "hoped" Sitzmann would give him drug-related work, not that Sitzmann had "promised" or "failed to supply cocaine" to Jones.  Def. June 4, 2014 Letter at 2.  The government counters that Buss' trial testimony is not inconsistent with Jones' grand jury testimony, and that the defense is conflating "Jones's attempts to get 20 kilograms of cocaine from Sitzmann and Jones's last discussion with Sitzmann involving how Sitzmann came to ask Jones to take a cocaine trip."  Gov't Opp. at 5.

The Court agrees with the government that the record shows there were two different exchanges that occurred between Jones and Sitzmann.  The first exchange involved Jones' efforts to purchase 20 kilograms of cocaine from Sitzmann beginning in or around September 2003.  The second and separate exchange occurred in February 2004, when Jones asked Sitzmann for drug-related work, but then rejected Sitzmann's offer to make a cocaine trip from Colombia to Spain.  As a consequence, the Court concludes that Buss' testimony at trial concerning the first exchange is not inconsistent with the government's description of Jones' grand jury testimony, which, in the portion highlighted by Sitzmann, pertained to the second exchange.

Turning to the first exchange, Agent Buss testified at trial that from September 2003 through January 2004, Jones attempted to acquire cocaine, first from Mr. Sitzmann, and then after "Mr. Sitzmann failed to supply it to him," through Mr. Colligan.  Apr. 30, 2012 Trial Tr. 9:24-10:11 (Buss testimony).  This testimony accords with Jones' representations in the statement of facts in support of his plea, in which Jones averred that Sitzmann had promised to supply him with cocaine, but, by January 2004, Sitzmann had still not "delivered the cocaine as promised."  Jones' Statement of Facts at 1.  Consequently, Jones telephoned Colligan in January 2004, to ask Colligan "to supply him with 20 kilos of cocaine or, in the alternative, provide him with another source of cocaine."  Id.  Thus, the course of events that Agent Buss described at trial is not inconsistent with Jones' own representations regarding this particular exchange, but rather is supported by what Jones averred in his statement of facts.

Turning to the second and separate exchange — Jones' February 2004 request for drug-related work and Sitzmann's subsequent offer to Jones to travel from Colombia to Spain —

Sitzmann argues that because he was arrested in France in February 2004, "just days after [his February 2004] meeting with Jones," the timeline proves to be too short for him to have promised and failed to provide Jones with cocaine, as Buss testified had occurred.  Def. Mot. at 4.  The defendant's argument, however, is based on the flawed premise that only one interaction occurred between Jones and Sitzmann.  Jones' statement of facts in support of his guilty plea confirms that by January 2004, Sitzmann already had promised and failed to supply Jones with cocaine.  Jones' Statement of Facts at 1.  The government's description of Jones' grand jury testimony shows that Jones interacted with Sitzmann again, in or around February 2004.  But this time the exchange related to Jones' request for drug-related work and Sitzmann's offer to Jones to make a cocaine trip from Colombia to Spain.  Gov't Nov. 6, 2013 Letter at 2.  The government's description of Jones' grand jury testimony read together with Jones' statement of facts in support of his plea establishes that the interaction between Sitzmann and Jones in February 2004 was a separate and different exchange from the one that occurred in or around September 2003.  The Court therefore concludes that Buss' trial testimony relating to Jones' attempts to purchase cocaine from September 2003 through January 2004, and Sitzmann's failure to provide Jones with cocaine during that timeframe, is not contrary to Jones' grand jury testimony.

Mr. Sitzmann next points to a second alleged contradiction between Agent Buss' trial testimony and the summary of Jones' grand jury testimony, which Sitzmann claims requires disclosure of Jones' testimony under Brady and Giglio.  Sitzmann claims that Buss characterized as "Sitzmann's people" the individuals to whom Jones had hoped to sell cocaine, and that this characterization purportedly contradicts Jones' grand jury testimony because Jones never stated

that those individuals were involved in the conspiracy charged in this case.  Def. Mot. at 5

(quoting Apr. 30, 2012 Trial Tr. at 11:19) (Buss testimony).  The government submits that Buss'

trial testimony does not contradict Jones' grand jury testimony, but, rather, is consistent with

Jones' grand jury testimony and other evidence presented at trial.  Gov't Opp. at 7.  During the

trial, Buss testified to the following:

> Q.   Now, what was — what did you learn that Mr. Jones was going to do
>      with the 20 or the 16 kilograms of cocaine?
>
> A.   To serve it to previous buyers of his, of cocaine.
>
> Q.   Okay.
>
> A.   Co-conspirators in the drug investigation.
>
> Q.   Okay.  And did you come to learn whether Mr. Sitzmann was
>      involved with those individuals?
>
> A.   He was.
>
> Q.   And were they Mr. Jones's people or were they Mr. Sitzmann's
>      people that the cocaine was ultimately going to go to?
>
> A.   More of Mr. Sitzmann's people.

Apr. 30, 2012 Trial Tr. at 11:8-19 (Buss testimony).

Mr. Sitzmann attempts to show a contradiction between Agent Buss' trial

testimony and Jones' grand jury testimony by pointing to a purported omission in Jones' grand

jury testimony.  Sitzmann argues that "Jones never stated in the grand jury that [individuals to

whom he planned to sell cocaine] were ever involved in the conspiracy charged in this case."

Def. Mot. at 5.  And Sitzmann contends that "impeachment is often accomplished by omission."

Def. June 4, 2014 Letter at 2.  While this may be true in some circumstances, Sitzmann fails to

demonstrate that whatever the disconnect that might exist between the words used by Buss and

those purportedly used by Jones, this gap could feasibly have served to impeach Agent Buss. Moreover, there is sufficient evidence in the trial record to support Buss' characterization of Jones' potential cocaine buyers' connection to Sitzmann.[6]  For these reasons, the Court concludes that Mr. Sitzmann has failed to identify any impeachment evidence in the proffer of Jones' grand jury testimony that would satisfy the favorability element of <u>Brady</u>.

2.  Suppression

In order for a <u>Brady</u> violation to have occurred, the favorable evidence at issue must have been suppressed by the government.  <u>United States v. Pettiford</u>, 627 F.3d 1223, 1227 (D.C. Cir. 2010).  Suppression may be either intentional or inadvertent.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Strickler v. Greene</u>, 527 U.S. at 288 ("an inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment").  A defendant's failure to request favorable evidence does not absolve the government of its <u>Brady</u> obligations.  <u>Kyles v. Whitely</u>, 514 U.S. 419, 433 (1995) (citing <u>United States v. Agurs</u>, 427 U.S. 97, 107 (1976)).  But as Sitzmann has failed to identify any favorable evidence in the summary of Jones' grand jury testimony, the Court need not address the suppression question.

---

[6]     The government points to a number of connections between Sitzmann and the individuals whom Jones purportedly listed as potential cocaine buyers, including that Sitzmann: had the potential buyers' contact information in his various address books; stored his personal belongings in a bedroom in one of the potential buyer's home; and allegedly had a drug and money smuggling relationship with one of the potential buyers.  <u>See</u> March 11, 2004 and March 26, 2004 recorded calls/body wire transcripts at 18, 30-31 [Dkt. No. 243-1] (transcripts also admitted as part of Gov't Trial Exs. 40b2, 40g); excerpts from defendant's address book/note pad [Dkt. No. 243-2 to Dkt. No. 243-3] (excerpts also admitted as part of Gov't Trial Exs. 153, 154); excerpt from defendant's address book [Dkt. No. 243-4] (excerpt also admitted as part of Gov't Trial Ex. 765); Dep't of Homeland Security Report of Investigation of Gary Paulson [Dkt. No. 243-5]; and redacted excerpt from defendant's address journal [Dkt. No. 242-6] (excerpt also admitted as part of Gov't Trial Ex. 351).

12

### 3.  Materiality

Even if evidence is favorable to the defendant and has been suppressed or not disclosed by the prosecution, there is no <u>Brady</u> violation unless the withheld evidence is material. <u>Strickler v. Greene</u>, 527 U.S. at 281-82.  The Supreme Court and appellate courts have found evidence to be "material" when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  <u>United States v. Bagley</u>, 473 U.S. at 682; <u>see</u> <u>Strickland v. Washington</u>, 466 U.S. at 694; <u>United States v. Pettiford</u>, 627 F.3d at 1227.  After trial, "[t]he defendant bears the burden of showing a reasonable *probability* of a different outcome."  <u>Strickler v. Greene</u>, 527 U.S. at 291 (emphasis in original); <u>see</u> <u>United States v. Johnson</u>, 519 F.3d 478, 488 (D.C. Cir. 2008).  A reasonable probability is one that is sufficient to "undermine confidence in the verdict."  <u>United States v. Bagley</u>, 473 U.S. at 682 (quoting <u>Strickland v. Washington</u>, 466 U.S. at 694) (internal quotation marks omitted).  Thus, the defendant must show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  <u>Kyles v. Whitley</u>, 514 U.S. at 435.  This assessment requires a retrospective analysis that evaluates the strength of the evidence after the trial has concluded.  <u>See</u>, <u>e.g.</u>, <u>United States v. Bowie</u>, 198 F.3d 905, 912 (D.C. Cir. 1999) (highlighting the court's "responsibility to evaluate the impact of the undisclosed evidence not in isolation, but in light of the rest of the trial record").

The question here, therefore, is whether there is a reasonable probability that, had the government disclosed Jones' or Colligan's grand jury testimony before trial, the disclosure would have led to a different result.  The Court concludes that there is no reasonable probability

that the verdict would have been different had the government disclosed Jones' or Colligan's

grand jury testimony.  As noted, <u>supra</u> at 7, Sitzmann makes no argument as to how he would

have used Colligan's grand jury testimony to impeach Agent Buss.  Even if the defense had been

able to use Jones' testimony to attack Buss' credibility — which is doubtful based on the

foregoing discussion — the Court is confident that the jury would have found Sitzmann guilty

based on the overwhelming evidence presented at trial.  In other words, Sitzmann received "a

trial resulting in a verdict worthy of confidence," despite not possessing Jones' or Colligan's

grand jury testimony.  <u>Strickler v. Greene</u>, 527 U.S. at 289-90 (quoting <u>Kyles v. Whitley</u>, 514

U.S. at 434).

### B.  Rule 6(e) "Particularized Need" Exception

Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure provides that "[t]he

court may authorize disclosure — at a time, in a manner, and subject to any other conditions that

it directs — of a grand-jury matter . . . at the request of a defendant who shows that a ground

may exist to dismiss the indictment because of a matter that occurred before the grand jury."

While there is some small disagreement among courts regarding what precise standard a

defendant must meet in order to gain access to grand jury materials under Rule 6(e)(3)(E)(ii),

most courts have held that the appropriate standard is that of "particularized need," borrowed

from the standard under the case law applying to Rule 6(e)(3)(E)(i).  <u>United States v. Naegele</u>,

474 F. Supp. 2d 9, 10 (D.D.C. 2007) (citing cases); <u>see</u> <u>Ridings v. Department of Justice</u>, 38 F.

App'x 20, 21 (D.C. Cir. 2002) (per curiam) ("Even assuming appellant could invoke Rule

6(e)(3)(C)(ii) [now renumbered as Rule 6(e)(3)(E)(ii)], his claim nonetheless fails because

appellant did not make a 'showing of particularized need' for disclosure of the grand jury

transcripts . . .  [A]ppellant's unsupported assertion that a grand jury did not indict him does not

constitute the showing of particularized need required under [this Rule]." (internal citations

omitted)).  Such cases are "exceedingly rare," and it is settled that "conclusory or speculative

allegations of misconduct do not meet the particularized need standard; a factual basis is

required."  United States v. Naegele, 474 F. Supp. 2d at 10.  Mr. Sitzmann has offered no such

basis.

Sitzmann alleges that there are strong impeachment grounds requiring the

disclosure of Jones' and Colligan's grand jury transcripts.  Def. Mot. at 3.  As noted, however,

"[a] general claim . . . that disclosure of grand jury transcripts would reveal exculpatory evidence

is not sufficient to satisfy the requirement of a showing of particularized need."  United States v.

Wilkerson, 656 F. Supp. 2d at 35 (quoting United States v. Short, 671 F.2d 178, 187 (6th Cir.

1982)) (internal quotation marks omitted).  Since the Court has already concluded that the

government's proffer of Jones' testimony does not contradict Buss' trial testimony, and,

therefore, is not Brady or Giglio material, it follows that Sitzmann has not made a showing of

"particularized need" as to Jones' testimony.  Moreover, as noted supra at 7, Sitzmann has not

offered any arguments relating specifically to Colligan's testimony.  Because speculation is an

insufficient basis on which to require disclosure under Rule 6(e), the Court also concludes that

Mr. Sitzmann has not demonstrated the "particularized need" required for disclosure of

Colligan's testimony.

### C.  The Jencks Act and Rule 16

In addition to the alleged Brady and Giglio violations, Sitzmann also asserts that

the government violated its obligations under Napue and Mooney; the Jencks Act, 18 U.S.C.

§ 3500; and Rule 16 of the Federal Rules of Criminal Procedure.  Def. Mot. at 1.[7]  He does not,

however, offer any specific arguments discussing the nature of the alleged Jencks Act and Rule

16 violations.

Under the Jencks Act, the government is obligated to produce "any statement . . .

of the witness in the possession of the United States which relates to the subject matter as to

which the witness has testified."  18 U.S.C. § 3500(b).  The government's obligation, however, is

not triggered until the witness has testified on direct examination at trial.  18 U.S.C.

§ 3500(a).  Sitzmann claims that the government violated the Jencks Act, but fails to address

why disclosure of Jones' and Colligan's grand jury testimony would be appropriate when neither

Jones nor Colligan testified at trial.  Sitzmann does make a reference to Rule 806 of the Federal

Rules of Evidence, presumably to suggest that disclosure under the Jencks Act is required or

permissible even though Jones and Colligan did not testify at trial, as Rule 806 allows the

credibility of a Rule 801(d)(2) hearsay declarant to be impeached "just as if the declarant has

testified as a witness."  See Def. Mot. at 1.  But this line of argument is clearly foreclosed by

binding precedent.  See United States v. Williams-Davis, 90 F.3d at 512-13 (holding that the

Jencks Act does not extend to a co-conspirator who did not testify at trial, but whose statements

were admitted); United States v. Tarantino, 846 F.2d 1384, 1418 (D.C. Cir. 1988) (same).  The

---

[7]     Mr. Sitzmann, in the instant motion, does not present any evidence demonstrating
that the government deliberately deceived the Court by presenting knowingly false evidence to
the jury, Mooney v. Holohan, 294 U.S. at 112-13, or allowed knowingly false testimony to stand
uncorrected at trial, Napue v. Illinois, 360 U.S. at 269.  He does, however, suggest in his reply
brief that the government violated its obligations under Napue when it permitted Buss' allegedly
unsupported "damaging testimony" to stand uncorrected at trial.  Def. Reply at 2-3.  Nonetheless,
a general claim that testimony is damaging — but not perjured or false — is insufficient to
support a Napue violation.  The Court therefore concludes that Sitzmann has failed to show that
the government violated its obligations under either Napue or Mooney.

Court therefore concludes that Sitzmann has no basis under the Jencks Act to compel the production of the grand jury testimony of Jones and Colligan.  Neither Jones nor Colligan testified at trial, and the admission of their statements at trial does not transform these individuals into testifying witnesses under the Jencks Act.

Sitzmann also claims, without any discussion, that Jones' and Colligan's grand jury transcripts should have been disclosed under Rule 16.  The Rule requires the government to disclose the substance of any relevant written or oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent "if the government intends to use the statement at trial."  FED. R. CRIM. P. 16(a)(1)(A).  Rule 16, however, does not authorize the discovery or inspection of statements made by prospective government witnesses except as provided for by the Jencks Act.  FED. R. CRIM. P. 16(a)(2); United States v. Safavian, 233 F.R.D. at 15-16.  This remains true even if the statements are "material to preparing the defense," unless (1) portions of those statements contain the substance of any relevant written or oral statements made by the defendant that are disclosable under Rule 16(a)(1)(A) or (B); or (2) they are exculpatory or favorable, that is, Brady material.  United States v. Safavian, 233 F.R.D. at 16.  Neither of the exceptions to Rule 16 applies to Mr. Sitzmann.  He has not argued that either Jones' or Colligan's grand jury testimony contained the substance of his own written or oral statements, and, as the Court already has concluded, there is no Brady violation.  Thus, Sitzmann has no basis under Rule 16 to compel the production of Jones' or Colligan's grand jury testimony.

III.  CONCLUSION

The Court declines Mr. Sitzmann's request for the production of the grand jury testimony of Jones and Colligan.  Sitzmann has failed to establish a basis that would require the disclosure of this testimony, or of any other allegedly withheld evidence, under Brady v. Maryland, 373 U.S. 83; Giglio v. United States, 405 U.S. 150; Napue v. Illinois, 360 U.S. 264; Mooney v. Holohan, 294 U.S. 103; Rule 16 of the Federal Rules of Criminal Procedure; or the Jencks Act, 18 U.S.C. § 3500.  Accordingly, for the foregoing reasons, it is hereby

ORDERED that the defendant's Motion for an Order Directing the Production of the Grand Jury Testimony of George Jones and Terrence Colligan and All Other Impeachment Evidence [Dkt. No. 242] is DENIED.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
DATE:  November 18, 2014                              United States District Judge