UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 08-0242 (PLF) |
| GREGORY JOEL SITZMANN, | ) ) | |
| Defendant. | ) ) | |

OPINION AND ORDER

Pending before the Court are defendant Gregory Joel Sitzmann's pro se Request for Reduction of Sentence ("Def. Pro Se Mot.") [Dkt. No. 319] and his Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Def. Suppl. Mot.") [Dkt. No. 327] filed through counsel.  Mr. Sitzmann contends that his advanced age, numerous medical conditions, and deteriorating overall health justify a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  Def. Pro Se Mot. at 3-4; Def. Suppl. Mot. at 1-2.

The United States opposes these motions, arguing that Mr. Sitzmann's concerns surrounding his health and aging do not establish extraordinary and compelling reasons for a sentence reduction, and that Mr. Sitzmann's offense and his criminal history weigh against releasing him.  See United States' Opposition to Defendant's Motion to Reduce Sentence Pursuant to the Compassionate Release Statute ("Gov't Opp.") [Dkt. No. 329] at 1.  The government maintains that Mr. Sitzmann should serve out his full sentence to account for the

serious nature of his offenses and because he remains a danger to the community.  Id. at 1.  For the following reasons, the Court will deny Mr. Sitzmann's motions for compassionate release.[1]

## I.  BACKGROUND

A federal grand jury charged Mr. Sitzmann in a one count indictment filed on August 7, 2008, with Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine, in violation of 21 U.S.C. § 846.  Indictment at 1.  At the time of the indictment, Mr. Sitzmann had served in a French prison for charges related to drug trafficking in France.  Gov't Opp. at 15-16; PSR at ¶¶ 65-68.  The following day, French authorities deported him to the United States, where he was immediately arrested at Washington Dulles International Airport in connection with this case.  Gov't Opp. at 2; PSR at 1.

On May 21, 2012, following a 23-day trial, a jury found Mr. Sitzmann guilty of the single charge in the indictment, conspiracy to distribute and possess with intent to distribute cocaine.  United States v. Sitzmann, 893 F.3d 811, 818 (D.C. Cir. 2018); Jury Verdict Form at 1.  On October 23, 2015, the Court sentenced Mr. Sitzmann to 348 months (29 years) of incarceration, to be followed by 120 months (10 years) of supervised release.  Judgment at 2, 3.  The Court took into account twelve months of time Mr. Sitzmann served in French prison when

---

[1]  The Court has reviewed the following documents in connection with the pending motion:  Indictment ("Indictment") [Dkt. No. 001]; Jury Verdict Form ("Verdict Form") [Dkt. No. 176]; Presentence Investigation Report ("PSR") [Dkt. No. 273]; Judgment ("Judgment") [Dkt. No. 290]; defendant's June 1, 2020 Letter ("Letter 1") [Dkt. No. 315]; defendant's July 14, 2020 Letter ("Letter 2") [Dkt. No. 317]; defendant's September 17, 2020 Letter ("Letter 3") [Dkt. No. 318]; Mr. Sitzmann's pro se Request for Reduction of Sentence ("Def. Pro Se Mot.") [Dkt. No. 319]; Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Def. Suppl. Mot.") [Dkt. No. 327]; United States' Opposition to Defendant's Motion to Reduce Sentence Pursuant to the Compassionate Release Statute ("Gov't Opp.") [Dkt. No. 329]; and Defendant's Reply to United States of America's Opposition to Defendant's Motion to Reduce Sentence Pursuant to the Compassionate Release Statute ("Def. Reply") [Dkt. No. 333].

calculating this sentence, and Mr. Sitzmann was also given credit for approximately seven years of time served in the D.C. jail. See Transcript of Day 3 of Sentencing [Dkt. No. 305] at 104. Mr. Sitzmann appealed his sentence on four grounds, asserting improper venue, lack of jurisdiction, Brady and Napue violations, and ineffective assistance of his trial counsel. See United States v. Sitzmann, 893 F.3d at 819. The court of appeals affirmed Mr. Sitzmann's conviction on June 29, 2018. See id.

Mr. Siztmann, now seventy-one-years-old, is incarcerated at Federal Medical Center ("FMC") in Lexington, Kentucky. See Gov't Opp. at 16. At the time Mr. Sitzmann filed his motion for compassionate release, he had served approximately 12 years and 1 month of his 29-year sentence. See Def. Ex. A. He has a projected release date of April 26, 2033. Def. Exs. A-B. Mr. Sitzmann submitted three pro se letters concerning his request for a sentence reduction, written on June 1, 2020, July 14, 2020, and September 17, 2020. See Letter 1; Letter 2; Letter 3.[2] On October 10, 2020, the Court docketed Mr. Sitzmann's pro se request for sentence reduction. Def. Pro Se Mot. On April 9, 2021, Mr. Sitzmann filed through counsel a supplemental motion for compassionate release, arguing that his failing health, advanced age, and twelve years of time served are grounds for his early release. See Def. Suppl. Mot. at 6.

## II. LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed . . . but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526 (2011) (internal quotation marks and citation omitted). One such exception is codified at 18 U.S.C. § 3582(c)(1)(A). As modified by

---

[2]  Mr. Sitzmann's June 1, 2020 letter was inadvertently docketed twice. Compare Letter 1 [Dkt. No. 315], with Defendant's Second June 1, 2020 Letter [Dkt. No. 316].

the First Step Act in 2018, Section 3582(c)(1)(A) allows courts to modify a sentence upon a motion by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request."  18 U.S.C. § 3582(c)(1)(A).

Once a defendant satisfies this exhaustion requirement, they must show that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A).  In evaluating extraordinary and compelling circumstances, courts historically have looked to a policy statement promulgated by the U.S. Sentencing Commission.  See U.S. SENT'G GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 cmt. n.1(A) (U.S. SENT'G COMM'N 2018); United States v. Clark, Crim. No. 10-133, 2021 WL 5630795, at *2 (D.D.C. Dec. 1, 2021); United States v. Speaks, Crim. No. 18-0111-1, 2021 WL 3128871, at *3 (D.D.C. July 23, 2021); United States v. Hicks, Crim. No. 93-97-2, 2021 WL 1634692, at *3 (D.D.C. Apr. 27, 2021).  The Sentencing Commission issued this policy statement in 2018 before enactment of the First Step Act.  Because the Sentencing Commission "has lacked a quorum since early 2019, . . . it has been unable to update its preexisting policy statement concerning compassionate release to reflect the First Step Act's changes."  United States v. Long, 997 F.3d 342, 348 (D.C. Cir. 2021).  Specifically, the policy statement refers only to motions brought by the Bureau of Prisons ("BOP") and does not account for the fact that defendants may now bring compassionate release motions on their own behalf.  See id. at 349.

The D.C. Circuit therefore has held that the policy statement "is not 'applicable' to defendant-filed motions for compassionate release under the First Step Act."  United States v. Long, 997 F.3d at 355.  In the wake of Long, district courts must "assess whether [a defendant] has demonstrated 'extraordinary and compelling reasons' warranting a sentence reduction

4

under 18 U.S.C. § 3592(c)(1)(A), without treating U.S.S.G. § 1B1.13 as binding." United States v. Johnson, 858 F. App'x 381, 384 (D.C. Cir. 2021) (per curiam).  Even as the policy statement is not binding, however, it may still provide guidance as to the extraordinary and compelling nature of a defendant's circumstances.  See United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021); United States v. Thompson, 984 F.3d 431, 433 (5th Cir. 2021); United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020).

According to the policy statement, "extraordinary and compelling reasons" exist where the defendant is "suffering from a serious physical or mental condition" or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), (III).  Health conditions that limit one's ability to practice self-care in a detention facility include those that "compromise a defendant's ability . . . to provide for his own activities of daily living, such as eating and drinking, toileting, washing and dressing, and mobilization." United States v. Morris, Crim. No. 12-154, 2020 WL 2735651, at *7 (D.D.C. May 24, 2020).

The compassionate release statute instructs courts to consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are applicable" in evaluating whether to reduce a sentence.  18 U.S.C. § 3582(c)(1)(A).  These factors include:

> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)  the need for the sentence imposed—
>
>> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; . . .

18 U.S.C. § 3553(a)(1)-(2).³  A court's consideration of the sentencing factors "requires a discretionary balancing," United States v. Long, 997 F.3d at 360, "with an eye toward whether it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence," United States v. Johnson, 464 F. Supp. 3d 22, 30 (D.D.C. 2020).

### III.  DISCUSSION

#### A.  Exhaustion of Administrative Remedies

The parties do not dispute that Mr. Sitzmann has exhausted his administrative remedies.  Def. Suppl. Mot. at 5; Gov't Opp. at 20 n.3.  On March 20, 2020, he submitted a request to the warden at FMC Lexington for reduction of his sentence under 18 U.S.C. § 3582(c).  Def. Suppl. Mot. at 5.  More than thirty days elapsed with no response from the warden.  Id.  Mr. Sitzmann therefore exhausted his administrative remedies and his request is properly before this Court.  See 18 U.S.C. § 3582(c)(1)(A).

#### B.  Extraordinary and Compelling Reasons

Mr. Sitzmann's motions raise concerns that his advanced age, failing health, and time spent incarcerated establish extraordinary and compelling circumstances for a sentence

---

³ Section 3582(c)(1)(A) also directs courts to evaluate whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  As noted above, the existing policy statement is no longer applicable to defendant-filed motions.  United States v. Long, 997 F.3d at 355.  The requirement of the policy statement that release be denied if a defendant remains "a danger to the safety of any other person or to the community," id. at 348 (quoting U.S.S.C. § 1B1.13(2)), no longer presents a "categorical bar" to release, id. at 360.  Nevertheless, "even without the policy statement, courts will still consider the anticipated effect of compassionate release on crime and public safety" in weighing the sentencing factors set out in 18 U.S.C. § 3553(a).  Id. at 356.

reduction. Def. Mot. at 6. Specifically, Mr. Sitzmann asserts that he has fifteen diagnosed medical conditions: atrial fibrillation, bilateral atrial enlargement, macular degeneration, pes cavus, plantar fasciitis, Dupuytren's Contracture, dynamic hyperinflation of the lungs, possible chronic obstructive pulmonary disease ("COPD"), pleurisy, a bladder polyp which may be transitional cell carcinoma, bladder outlet obstruction, benign prostate hypertrophy, gross hematuria, long COVID, and actinic keratoses. Def. Mot. at 10. He argues that these conditions impact his day-to-day activities, impair his mobility and cognitive function, and have resulted in neurological, cardiovascular, and pulmonary damage. Id. at 10-11. Mr. Sitzmann asserts that he has short-term memory loss, shortness of breath, sharp lung pain when performing certain activities, and trouble walking. Id. at 10-12. Mr. Sitzmann is housed at FMC Lexington, "a care level 3 facility that houses fragile, chronically ill patients who need frequent clinical visits to keep their conditions stable." Id. at 1.

The United States contends that Mr. Sitzmann has failed to establish extraordinary and compelling reasons for a sentence reduction because his recent BOP medical records "do not reflect current diagnoses of pes cavus, planter fasciitis, dynamic hyperinflation of the lungs, COPD, pleurisy, or gross hematuria." Gov't Opp. at 21. The United States further argues that "to the extent that [Mr. Sitzmann's] records indicate he suffers from atrial fibrillation (a side effect of which is biatrial enlargement), macular degeneration, foot pain, actinic keratoses, an enlarged prostate, memory issues related to his prior COVID-19 infection, and a *possible* bladder polyp, many of these conditions were known to the court at the time of sentencing, they all appear to be monitored and controlled, and they do not appear to be resulting in a serious deterioration in his physical or mental health because of the aging process or presenting any impediment to his ability to provide self-care in the institution." Id. at 21-22.

7

The Court concludes that Mr. Sitzmann's numerous documented medical conditions are sufficient to establish extraordinary and compelling circumstances within the meaning of the compassionate release statute. First, Mr. Sitzmann's circumstances are consistent with those that the Sentencing Commission has previously described as "extraordinary and compelling." The Commission's policy statement provides that a defendant who "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," may be entitled to a sentence reduction. U.S.S.G. § 1B1.13 cmt. n.1(B). Mr. Sitzmann satisfies the first and third factors because he is seventy-one-years-old and has now served over thirteen years of his sentence. Def. Reply at 13; PSR at 2. In addition, the Court is persuaded that the conditions described above constitute "a serious deterioration in physical or mental health because of the aging process." U.S.S.G. § 1B1.13 cmt. n.1(B). While the policy statement is not binding, the Court may still look to this standard for guidance. United States v. Johnson, 858 F. App'x at 384.

Furthermore, the compassionate release statute charges courts with conducting a "fact-specific, flexible analysis of potentially extraordinary and compelling reasons for release," and the Court agrees with Judge Ketanji Brown Jackson that "medical conditions that 'impair[]' a defendant's 'basic human functions' plainly suffice." United States v. Greene, 516 F. Supp. 3d 1, 22 (D.D.C. 2021) (quoting United States v. Ebbers, 432 F. Supp. 3d 421, 429 (S.D.N.Y. 2020)). Here, Mr. Sitzmann's medical records plainly document that Mr. Sitzmann has suffered from the medical conditions the government disputes in their opposition. See Def. Ex. E at 1 (pes cavus); Def. Ex. P at 1-3 (noting "resolved" gross hematuria); Def. Ex. T (possible COPD and pleurisy). Beyond these specific conditions, Mr. Sitzmann's medical

records are full of diagnoses of painful chronic conditions that, taken together, establish extraordinary and compelling circumstances. See United States v. Ebbers, 432 F. Supp. 3d at 428; United States v. Cantu-Rivera, 2019 WL 2578272, at *1 (S.D. Tex. June 4, 2019).

The United States also contends that because some of Mr. Sitzmann's conditions are currently stable, he cannot be experiencing "a serious deterioration" in his health. Gov't. Opp. at 22. Whether a defendant is experiencing a serious deterioration in health, however, is a fact-intensive, flexible analysis. See United States v. Greene, 516 F. Supp. 3d at 22. In Greene, Judge Jackson found extraordinary and compelling reasons for the defendant's release, notwithstanding the fact that "he [did] not 'requir[e] a medical facility placement' . . . and [] the BOP [] classified him as a 'care level 1 inmate[,]' meaning that he is 'healthy or [requires] simple chronic care.'" Id. at 23. Here, although some of Mr. Sitzmann's fifteen medical conditions may be stabilized, he is nonetheless a seventy-one-year-old level 3 inmate at a medical facility placement whose medical needs are complex. As such, this Court is persuaded that Mr. Sitzman has demonstrated extraordinary and compelling circumstances relating to his aging and overall health.

C.  Sentencing Factors

Despite Mr. Sitzmann's major health challenges, the Court concludes that reducing Mr. Sitzmann's sentence at this time would be inconsistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A). Specifically, "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), "the history and characteristics of the defendant," id., and "the need for the sentence imposed," id. § 3553(a)(2), "compel the conclusion that the purposes of punishment would not be served if [Mr. Sitzmann's] sentence was reduced." United States v. Sears, Crim. No. 19-21, 2020 WL 3250717, at *2 (D.D.C.

9

June 16, 2020) (denying defendant's motion despite finding "'extraordinary and compelling' reasons to justify his release."); see also United States v. Simmons, Crim. No. 15-0025, 2021 WL 5074741, at *7 (D.D.C. Nov. 2, 2021) (applying these same factors). Consideration of these factors "requires a discretionary balancing," United States v. Long, 997 F.3d at 360, "with an eye toward whether it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence," United States v. Johnson, 464 F. Supp. 3d at 30.

        With respect to "the nature and circumstances" of Mr. Sitzmann's offense, the Court notes that Mr. Sitzmann's criminal conduct was extremely sophisticated and prolonged. The evidence at trial established that "[Mr.] Sitzmann participated in a conspiracy to traffic large quantities of cocaine from Mexico and Colombia to the United States, Canada, Europe, and elsewhere." United States v. Sitzmann, 893 F.3d at 818; see also Gov't Opp. at 2. The evidence further demonstrated that Mr. Sitzmann played the leading role in this operation: "He recruited numerous participants, controlled both the cocaine supply and the drug proceeds for the organization, financed and provided the artifices for his smuggling network, and directed his numerous co-conspirators in furtherance of the conspiracy." Gov't Opp. at 30; see PSR ¶¶ 7-68. "Physical and documentary evidence revealed that [Mr.] Sitzmann owned airplanes used to transport drugs, as well as SUVs outfitted with secret compartments." United States v. Sitzmann, 893 F.3d 811, 833.

        Mr. Sitzmann urges the Court to evaluate his offense differently: as "a serious but non-violent offense [committed] seventeen years ago." Def. Suppl. Mot. at 1. He instead emphasizes his advanced age and the fact that he is "statistically unlikely to reoffend." Id. at 20. The facts, however, tell a different story. Mr. Sitzmann was "the organizer and leader" in this

10

criminal conspiracy that "involved over 1,800 kilograms of cocaine" and spanned "an extremely long period of time," namely, fourteen years, "despite periods of incarceration."  Gov't Opp. at 29, 30; PSR ¶ 8.  Based on Mr. Sitzmann's repeated and continuous criminal conduct, his actions clearly establish an ongoing disregard for the law.  See PSR at ¶¶ 7-68.

Mr. Sitzmann's history and characteristics similarly do not provide support for early release.  Although Mr. Sitzmann's lack of disciplinary history while incarcerated weigh in his favor, see Govt. Opp. at 33 n.8, the Court has serious concerns arising from Mr. Sitzmann's prior criminal record.  See Def. Suppl. Mot. at 18-19.  At the time Mr. Sitzmann was sentenced in this case, he had two previous criminal convictions in the United States and one in the Bahamas.  Govt. Opp. at 30-31.  In fact, in 1986, while serving a four-year sentence for two drug-related convictions in the Bahamas, Mr. Sitzmann escaped prison, and was ultimately apprehended and returned to the Bahamas in 1992 to complete his sentence.  Id. at 31; PSR ¶ 85.  In 2004, Mr. Sitzmann faced criminal proceedings again for possession of cocaine in France, where he spent four years detained before being extradited to the United States in 2008.  Id. at 31; PSR at 1.  On top of all this, "[t]he evidence at trial established that defendant's cocaine trafficking conspiracy began while he was incarcerated in MCC Miami."  Gov't Opp. at 31.

The parties disagree about how to evaluate Mr. Sitzmann's future dangerousness, and whether the time he has already served adequately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.  Mr. Sitzmann argues that his release plan and "substantial family support" will reduce the likelihood of recidivism, and that his "seventeen years in prison, including his time spent in lockdown due to COVID-19, reflect the seriousness of the crime and serve as adequate deterrence."  Def. Suppl. Mot. at 23-24.  He argues that "[w]hen prison conditions result in unintended suffering, courts have found that the

11

purpose of the punishment is no longer met." Id. at 24 (citing United States v. Mason, 471 F. Supp. 3d 225, 227 (D.D.C. 2020)).  In contrast, the United States argues that, at the time of filing, Mr. Sitzmann had been sentenced less than six years ago and has served less than half of his sentence.  Gov't Opp. at 33.  The government contends that Mr. Sitzmann is "seeking a much more significant reduction than other defendants who have been granted compassionate release during the pandemic." Id.

The Court agrees with the United States and finds that reducing Mr. Sitzmann's sentence to time served would not reflect the "the need for the sentence imposed" under 18 § 3553(a)(2).  To start, the Court reiterates the seriousness of Mr. Sitzmann's underlying conviction.  Mr. Sitzmann received a twenty-nine-year sentence for his leadership in an international drug conspiracy that spanned over fourteen years.  This is in sharp contrast to the defendant in United States v. Mason, who was sentenced to just five years of incarceration on one count of a drug-related charge.  See 471 F. Supp. 3d at 226.  "[G]iven the grave nature of the conduct for which [Mr. Sitzmann] was sentenced and his own particularly high level of culpability relative to his codefendants, the Court cannot conclude that the time already served suffices to 'reflect the seriousness of the offense.'" United States v. Simmons, 2021 WL 5074741, at *7.

Similarly, to support his argument that "dozens and dozens of prisoners have been granted compassionate release after serving smaller portions of their sentences," Mr. Sitzmann fails to cite a single case from this district, or one that involved a defendant serving a sentence over 120 months.  See Def. Reply at 19-20.  The government's position is thus more accurate:  a sentence reduction in this case would be "much more significant" than other defendants who have been granted compassionate release in this district, and by this Court, during the COVID-19

pandemic.  See, e.g., United States v. Hunter, Crim. No. 11-39, 2020 WL 5748115, at *1 (D.D.C. Sept. 25, 2020) ("Mr. Hunter has already served approximately 73% of his fifteen-year sentence."); United States v. Farley, Crim. No. 08-118, 2020 WL 4698434, at *1 (D.D.C. Aug. 13, 2020) ("Mr. Farley has already served approximately 95% of his fifteen year sentence"); United States v. Thomas, Crim. No. 10-23 (D.D.C. May 27, 2020) [Dkt. No. 28] ("Defendant has served almost all of his 151-month sentence, with a current projected release date [in less than four months from date of decision].").

In sum, the goals of incarceration would not be served by reducing Mr. Sitzmann's sentence.  Despite his age, and in view of Mr. Sitzmann's history and characteristics, the Court is not persuaded that he will not reoffend if released.  Furthermore, the Court remembers the trial in this case only too well, and it carefully considered the evidence presented at trial, the Sentencing Guidelines, and the Section 3553(a) factors before sentencing Mr. Sitzmann to twenty-nine years of incarceration.  Mr. Sitzmann has now served thirteen years, representing less than fifty percent of his full term.  In the Court's view, requiring him to serve at least a substantial portion of the remainder of his sentence is still appropriate and necessary "to promote respect for the law, [] to provide just punishment for the offense[, ] to afford adequate deterrence to criminal conduct[, and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)-(C).  The Court therefore finds that "it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence."  United States v. Johnson, 464 F. Supp. 3d at 30.

IV.  CONCLUSION

Despite Mr. Sitzmann's extraordinary and compelling circumstances, the sentencing factors identified in Section 3553(a) weigh against reducing Mr. Sitzmann's sentence at this time.  It therefore is hereby

ORDERED that Mr. Sitzmann's [Dkt. No. 319] pro se Request for Reduction of Sentence and Mr. Sitzmann's [Dkt. No. 327] Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) are DENIED.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE:  March 25, 2022