UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 08-0242 (PLF) |
| | ) | |
| GREGORY JOEL SITZMANN, | ) | |
| | ) | |
| Defendant. | ) | |

———————————————————

OPINION

Pending before the Court is defendant Gregory Joel Sitzmann's Renewed Motion for Compassionate Release ("Renewed Mot.") [Dkt. No. 368]. Mr. Sitzmann contends that his advanced age, numerous medical conditions, and deteriorating overall health justify a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Renewed Mot. at 3-5. The United States opposes Mr. Sitzmann's motion, arguing that even if he has established extraordinary and compelling medical reasons to warrant his release, he has failed to demonstrate that a sentence reduction is warranted under the sentencing factors of 18 U.S.C. § 3553(a). See United States' Opposition to Defendant's Renewed Motion for Compassionate Release ("Gov't Opp. to Renewed Mot.") [Dkt. No. 370] at 1. The United States maintains that despite his medical conditions, Mr. Sitzmann remains a danger to the community. Id. For the following reasons, the Court will grant Mr. Sitzmann's motion for compassionate release.[1]

---

[1]    The Court has reviewed the following documents in connection with the pending motion: Defendant's Renewed Motion for Compassionate Release [Dkt. No. 368], the United States' Opposition to Defendant's Renewed Motion for Compassionate Release [Dkt. No. 370], Defendant's Reply Brief in Support of Renewed Motion for Compassionate Release [Dkt. No. 372], and Defendant's Supplemental Evidence in Support of Renewed Motion for Compassionate Release [Dkt. No. 374]. In addition to the filings on the public docket, on May 7,

## I. BACKGROUND

On May 21, 2012, following a 23-day trial, a jury found Mr. Sitzmann guilty of Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine, in violation of 21 U.S.C. § 846.  See United States v. Sitzmann, 893 F.3d 811, 818 (D.C. Cir. 2018); Jury Verdict Form [Dkt. No. 174] at 1.  On October 23, 2015, the Court sentenced Mr. Sitzmann to 348 months (29 years) of incarceration, to be followed by 120 months (ten years) of supervised release.  Judgment [Dkt. No. 290] at 2, 3.  In deciding to impose a sentence of 29 years, the Court first varied downward by one year to take account of twelve months of incarceration Mr. Sitzmann had served in a French prison.  The Court also gave Mr. Sitzmann credit for approximately seven years he served in the D.C. Jail from 2008 to 2015 in relation to this case.  See Transcript of Record, United States v. Sitzmann, Crim. No. 08-0242 (October 23, 2015) [Dkt. No. 305] at 104:15-16; 104:22-23.  Mr. Sitzmann appealed his sentence on four grounds, asserting improper venue, lack of jurisdiction, Brady and Napue violations, and ineffective assistance of his trial counsel.  See United States v. Sitzmann, 893 F.3d at 819.  The court of appeals affirmed Mr. Sitzmann's conviction on June 29, 2018.  See id.

Thereafter, Mr. Sitzmann submitted several pro se letters (treated by the Court as motions) requesting a sentence reduction.  See Letters of June 22, 2020 [Dkt. Nos. 315, 316], August 7, 2020 [Dkt. No. 317], October 4, 2020 [Dkt. No. 318], and October 2, 2020 [Dkt. No. 319].  In addition to his pro se motions, Mr. Sitzmann's first counseled motion for compassionate release was filed on April 9, 2021.  See Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Dkt. No. 327].  The Court denied the pro se and counseled

---

2025, Mr. Sitzmann's counsel emailed the Court and the government Mr. Sitzmann's Release Plan, signed by two members of staff at his Bureau of Prisons facility.  See Email from Gregory Smith, Counsel for Mr. Sitzmann, to Judge Friedman's Chambers (May 7, 2025).

motions, finding that although Mr. Sitzmann had demonstrated extraordinary and compelling health reasons in favor of release, he had not served enough of his sentence to warrant a reduction in sentence.  See Opinion and Order of March 25, 2022 ("Op. and Order") [Dkt. No. 342] at 8, 12-13.  After Mr. Sitzmann filed the pending counseled Renewed Motion for Compassionate Release on March 7, 2025, the Court held oral argument on May 6, 2025, hearing from counsel on both sides, as well as from Mr. Sitzmann by phone.  See Minute Entry of May 6, 2025.

Mr. Sitzmann, now seventy-four-years-old, is incarcerated at Federal Medical Center in Lexington, Kentucky ("FMC Lexington").  See Gov't Opp. to Renewed Mot. at 2.  Of his total 29-year sentence, he served seven years in the D.C. Jail from 2008 to 2015 and has served almost ten years in the federal BOP system from 2015 to 2025, for a total of almost seventeen years.  Id.  Basing their calculations on various BOP release date projections, the government and the defense disagree on what percentage of his sentence Mr. Sitzmann has served.  According to the government, Mr. Sitzmann has a projected release date of April 26, 2032, and has served fifty-seven percent of his full-term sentence; that number jumps to sixty-seven percent considering credit for good time.  Id.; Transcript of Record, United States v. Sitzmann, Crim. No. 08-0242 (May 6, 2025) at 17:20-25.  Mr. Sitzmann asserts that he will be eligible for a halfway house or home confinement placement in August 2027 at the latest, and – using 2027 as his release date – calculates that he has served eighty-five to ninety percent of his sentence.  See Def. Reply [Dkt. No. 372] at 2-3; see also Transcript of Record, United States v. Sitzmann, Crim. No. 08-0242 (May 6, 2025) at 24:8-13.[2]

_____

[2]       The government and Mr. Sitzmann disagree on whether the August 2027 release date could change depending on additional credits Mr. Sitzmann might earn in the future. The government asserted at oral argument that the August 2027 release date will not change,

## II. LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed . . . but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526 (2011) (internal quotation marks and citation omitted). One such exception is codified at 18 U.S.C. § 3582(c)(1)(A). As modified by the First Step Act in 2018, Section 3582(c)(1)(A) allows courts to modify a sentence upon a motion filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request…." 18 U.S.C. § 3582(c)(1)(A). To grant a sentence reduction under the compassionate release statute, the defendant also must show that "extraordinary and compelling reasons warrant such a reduction" and that the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Congress has delegated to the Sentencing Commission the authority to define the circumstances that constitute "extraordinary and compelling reasons" for release under the statute. See 28 U.S.C. § 994(t); see also United States v. Bailey, Crim. No. 19-0391 (JDB), 2025 WL 1114185, at *4 (D.D.C. Apr. 15, 2025). From 2019 to 2022, however, the Sentencing Commission had no quorum and therefore was unable to promulgate policy statements to take account of the First Step Act. Several courts of appeals held that the then-existing policy statement was not applicable to defendant-filed motions. See United States v. Long, 997 F.3d 342, 355 (D.C. Cir. 2021) (citing cases in seven circuits ruling that "U.S.S.G. § 1B1.13 is not

---

even if Mr. Sitzmann earns future good time credits. Transcript of Record, United States v. Sitzmann, Crim. No. 08-0242 (May 6, 2025) at 27:3-9. Mr. Sitzmann disagreed, arguing that that future good time credits he earns could result in an earlier release date. Id. at 22:17-21.

'applicable' to defendant-filed motions for compassionate release under the First Step Act."); see also United States v. Jenkins, 50 F.4th 1185, 1214 (D.C. Cir. 2022) (Ginsburg, J, concurring in part) (describing the lack of a quorum). In 2022, the Sentencing Commission regained its quorum and promulgated amendments to the Guidelines, commentary, and policy statements that became effective on November 1, 2023. See United States v. Foy, Criminal No. 21-0108, 2024 WL 3471247, at *4 (D.D.C. July 19, 2024). Federal courts now may consider the guidance announced by the Sentencing Commission in determining whether extraordinary and compelling reasons exist to grant a reduction in sentence. See United States v. Jenkins, 50 F.4th at 1196 ("[C]ourts may consider [Section 1B1.13 and its commentary] even in cases involving defendant-filed motions for compassionate release."); see also United States v. Foy, 2024 WL 3471247 at * 4.

The Commission's policy advises that courts may find extraordinary and compelling reasons for a sentence reduction by considering "(1) the defendant's medical circumstances, (2) the defendant's age, (3) the defendant's family circumstances, (4) victim abuse, (5) other reasons, or (6) an unusually long sentence." United States v. Foy, 2024 WL 3471247, at * 4; see U.S.S.G. § 1B1.13(b)(1)–(6).

Within the first consideration – the defendant's medical circumstances –the Commission provides the following examples:

(B) The defendant is—

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process,

> that substantially diminishes the ability of the defendant to provide
> self-care within the environment of a correctional facility and from
> which he or she is not expected to recover.

U.S.S.G. § 1B1.13(b)(1)(B)(i-iii).

Finally, courts must consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are applicable" in evaluating whether to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A). These factors include:

> (1)  the nature and circumstances of the offense and the history and
> characteristics of the defendant;
>
> (2)  the need for the sentence imposed—
>
> > (A)  to reflect the seriousness of the offense, to promote respect for the law,
> > and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D)  to provide the defendant with needed educational or vocational training,
> > medical care, or other correctional treatment in the most effective manner;
> > . . .

18 U.S.C. § 3553(a)(1)-(2).

A court's consideration of the sentencing factors "requires a discretionary balancing of multiple factors, not just dangerousness." United States v. Long, 997 F.3d at 360. Deciding whether the defendant's motion for compassionate release will be granted requires the court to "reassess the applicable section 3553(a) factors, [] with an eye toward whether it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence…." United States v. Johnson, 464 F. Supp. 3d 22, 30 (D.D.C. 2020).

### III. DISCUSSION

#### A.  Exhaustion of Administrative Remedies

The parties agree that Mr. Sitzmann has exhausted his administrative remedies. He requested a reduction in sentence from the warden of FMC Lexington on March 20, 2020, and more than 30 days have passed since Mr. Sitzmann's request.  See Gov't Opp. to Renewed Mot. at 6 n.5.

#### B.  Extraordinary and Compelling Reasons

In this Court's March 25, 2022 Opinion and Order denying Mr. Sitzmann's original counseled motion for compassionate release, the Court found that "Mr. Sitzmann's numerous documented medical conditions [were] sufficient to establish extraordinary and compelling circumstances within the meaning of the compassionate release statute."  Op. and Order at 8.  In opposing Mr. Sitzmann's Renewed Motion for Compassionate Release, the government does not contest this Court's 2022 finding of extraordinary and compelling reasons to justify compassionate release.  See Gov't Opp. to Renewed Mot. at 6 n.4.  It focuses instead on its assertion that Mr. Sitzmann "remains dangerous, and his originally imposed sentence remains appropriate."  Id. at 6.  The Court has examined Mr. Sitzmann's previous medical conditions and the updates since its 2022 opinion.  In the three years since the Court issued that opinion, Mr. Sitzmann's health conditions have worsened.  He had open-heart surgery on July 23, 2024, and has had difficulty walking since the operation.  He is receiving no physical therapy at FMC Lexington.  He has been told by Bureau of Prisons ("BOP") staff that he may need to have a second heart surgery at some point, but the timing for that surgery is unclear.  See

Renewed Mot. at 3-4. [3]  He has a cataract in his left eye and has been unable to use that eye for the past year; Mr. Sitzmann asserts that BOP has not treated his left eye because his right eye remains in working order.  See id. at 4.  Under these current circumstances, the Court again finds that Mr. Sitzmann's medical conditions constitute extraordinary and compelling reasons to consider granting early release.

### C.    Sentencing Factors

Having established that extraordinary and compelling reasons exist to grant Mr. Sitzmann early release, the Court will consider the relevant sentencing factors of 18 U.S.C. § 3553(a).  Consideration of these factors "requires a discretionary balancing," United States v. Long, 997 F.3d at 360, "with an eye toward whether it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence. . ." United States v. Johnson, 464 F. Supp. 3d at 30.

The nature and circumstances of Mr. Sitzmann's offense weigh against his release.  As the Court found in 2022, Mr. Sitzmann's "criminal conduct was extremely sophisticated and prolonged."  Op. and Order at 10.  He "participated in a conspiracy to traffic large quantities of cocaine from Mexico and Colombia to the United States, Canada, Europe, and elsewhere."  Id., quoting United States v. Sitzmann, 893 F.3d at 818.  The Court noted that "[t]he evidence further demonstrated that Mr. Sitzmann played the leading role in this operation" by recruiting participants, controlling supply and proceeds for the trafficking organization, and directing other co-conspirators in the activities of the trafficking network.  Id., citing the United

---

[3]        At oral argument on May 6, 2025, Mr. Sitzmann stated that after a recent medical procedure, he may be able to avoid a second cardiac surgery if he is able to take medication each day at the prescribed time.  Transcript of Record, United States v. Sitzmann, Crim. No. 08-0242 (May 6, 2025) at 9:1-18.

States' Opposition to Defendant's Motion to Reduce Sentence Pursuant to the Compassionate

Release Statute [Dkt. No. 329] at 30.  Despite his counsel's assertion that Mr. Sitzmann's crime

was non-violent, see Def. Reply at 4, the Court agrees with the government's view presented at

the May 6, 2025 oral argument:  although Mr. Sitzmann did not personally engage in violence,

his conduct purposefully fed illegal drugs into a system that creates and benefits from violence

worldwide.  See Transcript of Record, United States v. Sitzmann, Crim. No. 08-0242

(May 6, 2025) at 27:11-21; see also United States v. Holroyd, 464 F. Supp. 3d 14, 21

(D.D.C. 2020) (denying compassionate release in part because even though the defendant had

not engaged in violence, the "drug trade fuels violence, death, and addictions" and has

"tremendous consequences" for the community).

   While this factor weighs against his release, it is not dispositive.  After careful

consideration, the Court finds that the remaining factors weigh in favor of Mr. Sitzmann's

release.  As to the history and characteristics of Mr. Sitzmann himself, the Court has already

acknowledged his long and serious history of criminal activity.  See Op. and Order at 11.  But as

Mr. Sitzmann notes, his most recent criminal activity is decades old, see Def. Reply at 4, and the

Court is convinced that he is not capable of engaging in future criminal activity considering his

current health.  He is unable to walk in a straight line or up a flight of stairs, and due to an

untreated cataract in his left eye, he has not been able to read anything using that eye for the past

year.  See Def. Renewed Mot. at 3-4.  The Court believes that these impairments, along with the

age of his criminal offenses and the conditions of his mandatory ten-year supervised release,

demonstrate that upon release, Mr. Sitzmann will not be able to reactivate his international

networks and engage in new criminal activity.  His current medical condition and the age of his

criminal activities weigh in favor of his early release.

While incarcerated, Mr. Sitzmann has contributed in a positive manner to the BOP inmate communities to which he has been assigned.  During his time at the D.C. Jail, he worked as a tutor for between fifty and sixty students in the GED program and while at FMC Lexington, he has worked in the Inmate Companion Program, assisting other inmates who are physically unable to perform daily tasks.  Def. Mot. for Compassionate Release [Dkt. 327] at 18. His disciplinary record while incarcerated is exemplary; in fact, since his 2015 sentencing, he has had only one minor disciplinary infraction for being in an unauthorized area in 2021.  See United States' Supplemental Evidence in Support of its Opposition to Defendant's Renewed Motion for Compassionate Release [Dkt. 375] at Ex. 2; see also United States' Opposition to Defendant's Motion to Reduce Sentence Pursuant to the Compassionate Release Statute [Dkt. No. 329] at 33 n.8.  As the government conceded in its opposition to Mr. Sitzmann's original compassionate release motion, his lack of disciplinary infractions weighs in his favor.  See id.; see also United States v. Johnson, 619 F. Supp. 3d at 97-98; United States v. Torres, 464 F. Supp. 3d 651, 661 (S.D.N.Y. 2020).

Although the government argues that Mr. Sitzmann's lack of educational programming while incarcerated demonstrates that he is not prepared to re-enter the community, see Gov't Opp. to Renewed Mot. at 9-10, the Court agrees with Mr. Sitzmann that this deficit is not necessarily indicative of Mr. Sitzmann's lack of rehabilitation or ability to successfully adjust to life outside FMC Lexington.  The BOP system for providing access to educational programs appears to be limited in part by the availability of programming staff – a condition outside Mr. Sitzmann's control.  Def. Reply at 5-6.  Indeed, as of April 23, 2025, Mr. Sitzmann "ha[d] been attempting to program to reduce his recidivism and promote opportunity upon release while at FMC Lexington."  Letter of April 23, 2025 from Rachel Farrell, FMC Lexington Social Worker

[Dkt. No. 374-1]. According to a BOP social worker, between 2019 and April 23, 2025, Mr. Sitzmann has completed ten programs, including topics such as "Money Smart Older Adults," "AARP Foundation Finance," and "Wellness Inside Out," and has been waitlisted for seven other programs. Id. The Court does not find this programmatic record to be lacking, especially when one considers that the 2019-2025 timeframe covers the height of the COVID-19 pandemic, as well as the issuance of First Step Act amendments that gave credit time for programs completed, thereby increasing demand for programs BOP-wide. See Def. Reply at 5-6. Mr. Sitzmann's enrollment and his attempts at enrollment in programs to reduce his potential recidivism and prepare to adjust to life outside the BOP weigh in his favor. See United States v. Johnson, 619 F. Supp. 3d at 98; United States v. Fennell, 570 F. Supp. 557, 364 (W.D.Va. 2021).

Mr. Sitzmann's relationship with his sister, with whom he plans to reside in Iowa when released, also weighs in favor of his ability to successfully re-enter the community. She has written that she is prepared to provide stable housing and financial support upon his release. Both she and another sister living nearby have indicated that they are retired and have time to "assist in [Mr. Sitzmann's] daily needs and transport him to all necessary medical appointments." Defendant's Supplemental Submission in Support of Renewed Motion for Compassionate Release [Dkt. No. 377] at Ex. 1.

The Court next turns to the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. See 18 U.S.C. § 3553(a). At Mr. Sitzmann's sentencing in 2015, the Court reviewed Mr. Sitzmann's criminal history and his offense before sentencing him to 348 months of incarceration, to be followed by a mandatory 120 months of supervised release. See Judgment

[Dkt. No. 290] at 2, 3.  The Court well remembers the lengthy jury trial and post-trial proceedings in this case and does not discount the seriousness of Mr. Sitzmann's criminal history and his activities that supported an infrastructure of international drug trafficking.   Mr. Sitzmann's conviction for Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine called for a sentence that reflected the seriousness of his crime and provided just punishment for his criminal activities.

Even if the Court adopts the government's calculations reflecting the percentage of time Mr. Sitzmann has served, the Court concludes that his nearly-seventeen years in custody "adequately reflects the seriousness of his offenses."  United States v. Johnson, 619 F. Supp. 3d at 99 (noting that defendant's lengthy criminal history was "concerning" but he had served more than 20 years in prison, which "adequately reflect[ed] the seriousness of his offenses.")  To answer for his history of serious crimes, Mr. Sitzmann has been incarcerated since 2004, and since 2008 for his criminal activity in this case alone.  In the Court's view, Mr. Sitzmann's sentence and the time he has already served "adequately reflect[] the seriousness of his offenses," id., and provide "just punishment" for his offense.  See 18 U.S.C. § 3553(a).  "To prolong his incarceration further would be to impose a sentence 'greater than necessary' to comply with the statutory purposes of punishment."  United States v. Rodriguez, 451 F. Supp. 3d 392, 407 (E.D. Pa. 2020) (quoting 18 U.S.C. § 3553(a)).

IV.  CONCLUSION

At oral argument on May 6, 2025, Mr. Sitzmann indicated that if he is released, he will live with his sister in Iowa as reflected in a letter from her (Dkt. No. 377 at Ex. 1) and in the BOP Release Plan submitted by Mr. Sitzmann's counsel by email to the Court and the

government on May 7, 2025. See also Transcript of Record, **United States v. Sitzmann**, Crim.
No. 08-0242 (May 6, 2025) at 15:10-18. The Probation Office for this Court, in consultation
with the Probation Office for the District of Iowa, has approved Mr. Sitzmann's release plan to
live with his sister. And as outlined in the Court's original Judgment, upon his release from
BOP custody, Mr. Sitzmann will be subject to a mandatory ten years of supervised release with
appropriate conditions. During this time, he will be in regular contact with his Probation Officer.
See Judgment [Dkt. No. 290] at 3. The Probation Office and the Court agree that Mr.
Sitzmann's release must be managed to ensure that his medical conditions are not exacerbated by
transportation to his sister's residence and that he has medical treatment plans in place in Iowa
before his transfer. The Court therefore will require that the defendant obtain medical clearance
before BOP releases him. See Gov't Opp. at 11 n.7.

      For the foregoing reasons, the Court will grant Mr. Sitzmann's Renewed Motion
for Compassionate Release [Dkt. No. 368]. Mr. Sitzmann still must comply with the release
conditions listed in the Court's 2015 Judgment, including successfully completing ten years of
supervision. See Judgment at 3. But his term of imprisonment will shortly be at an end. The
government shall file a status report on or before July 31, 2025 updating the Court on the status
of Mr. Sitzmann's transfer.

      An Order consistent with this Opinion will issue this same day, with an amended
judgment and statement of reasons filed in due course.

      SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 7/24/25

13